STATE OF NEBRASKA EX REL. DONALD R. NORTON, APPELLANT,
v. THEODORE J. JANING, SHERIFF OF DOUGLAS COUNTY,
NEBRASKA, APPELLEE.

156 N. W. 2d 9

Filed January 26, 1968. No. 36703.

Charles Ledwith, for appellant.

Donald L. Knowles and Francis R. Pane, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

The relator commenced this action for a writ of habeas corpus to test the constitutionality of section 52-119, R. R. S. 1943. From a denial of the writ by the district court for Douglas County, relator appeals.

The relator, a contractor, was charged with the violation of section 52-119, R. R. S. 1943, in that he entered into a contract with Kathryn F. Kusek for the erection of a garage building and the repair of a retaining wall and concrete work and, having received the full contract price, failed to apply the money so received in payment of the claims of Larson Cement Stone Company and

McCan Concrete Company for their lienable material-men's claims in the amounts of $141.47 and $295.23, respectively. After relator was bound over to the district court for trial and while being held by the sheriff of Douglas County for want of bail, this habeas corpus proceeding was commenced asserting the unconstitutionality of the aforesaid criminal statute.

Section 52-119, R. R. S. 1943, provides as follows: "It shall be unlawful for any person, firm or corporation who has taken a contract for the erection, improvement, repair or removal of any house, mill, manufactory or building of any kind for another, and has received payment in whole or in part upon such contract, to fail to apply the money so received, or so much thereof as may be necessary for that purpose, in payment of the lawful claims of such laborers or materialmen as would otherwise have a right to file a laborers' or materialmen's lien against said house or other structure, unless such person, firm or corporation, taking such contract, shall have received and delivered to the owner of the property the written waiver of lien from all persons who otherwise would have a right to file a lien thereon." It is asserted by relator that such statute is violative of Article I, section 20, Constitution of Nebraska, which provides: "No person shall be imprisoned for debt in any civil action on mesne or final process, unless in cases of fraud."

The case is one of first impression in this state. Differences exist in the constitutional provisions of other jurisdictions. Some have no constitutional provisions against imprisonment for debt. In discussing the issue before us, we shall give no consideration to the cases from jurisdictions having constitutional provisions materially different or having no such provision at all.

It is asserted by the relator that the money paid to him under his contract by the property owner is his money and that any legislation that makes it a crime for one to use his own money for any purpose other than the payment of his debts violates the constitutional in-

hibition against imprisonment for debt except in case of fraud. The respondent asserts that the statute is a proper exercise of the police power for the purpose of protecting property owners by prohibiting money paid on contracts dealing with property subject to laborers' and materialmen's liens from diverting the money paid by the property owner without paying laborers and materialmen, thereby permitting the filing of mechanics' liens and requiring a second payment by the property owner to protect his property interests in amounts which he has once paid.

The position of the relator is succinctly and forcibly stated in People v. Holder, 53 Cal. App. 45, 199 P. 832 (1921), as follows: "Any legislation that makes it a crime for one to use his own money for any purpose other than the payment of his debts is violative of section 15 of article I of the constitution of this state, which expressly inhibits imprisonment for debt except in cases of fraud. [Citing cases.] The provision in the California constitution inhibiting imprisonment for debt 'in civil actions' cannot be evaded by making the nonpayment of a debt a crime. [Citing cases.] In the Peonage Cases, Judge Jones, in a forceful opinion, very pertinently says that 'when a man's liberties are taken from him because he does not pay a debt, and he is punished if he does not perform a civil contract, . . . he is put in prison bounds and is imprisoned for debt in the meaning of the constitution.' (123 Fed. 686.) In Ex parte Hollman, supra [79 S. C. 9, 60 S. E. 19, 21 L. R. A. N. S. 242, 14 Ann. Cas. 1105], the court uses this language: 'It is strenuously urged, however, that the act does not provide for imprisonment for debt under civil process, and that the general assembly may make an act criminal and punishable by imprisonment which is not fraudulent nor recognized as morally wrong. The power of the general assembly to make an act criminal which was before innocent is familiar. But the legislative power to make acts criminal and punishable by imprisonment cannot be

extended to an invasion of the rights guaranteed the citizens by the constitution. It is impossible to frame a valid statute punishing by imprisonment the exercise of the right to religious liberty, or the right to petition for the redress of grievances, or the right to be exempt from imprisonment for debt except in cases of fraud. These are all constitutional rights, which cannot be abridged under the guise of legislation against crime. The exercise of them cannot be crime.'"

The property owner, Kusek, entered into an agreement with relator to perform the work upon the completion of which she agreed to pay a fixed amount. Relator purchased and used materials which he obtained from Larson Cement Stone Company and McCan Concrete Company. Upon nonpayment of the contract price, the general contractor and the materialmen were protected by mechanics' liens if filed in accordance with applicable statutes. The property owner, however, paid the contract price to relator while the right of the materialmen to file liens still existed. If the general contractor does not pay for labor and materials, liens may be filed against the property, under section 52-102, R. R. S. 1943, providing, "the risk of all payments made to the original contractor shall be upon the owner until the expiration of the three months hereinbefore specified." It is evident that the criminal statute here in question was for the protection of laborers and materialmen, and the property owner as well, by requiring any payment on the contract price to be paid to unpaid laborers and materialmen still having a right to file mechanics' liens.

We point out that section 52-119, R. R. S. 1943, does not make the general contractor an agent or trustee for laborers or materialmen in receiving payments from the property owner, nor does it make the amounts so received a trust fund, or create a lien, or require an intent to defraud. It is urged that the payments to the general contractor on the contract price belong to the contractor as his own and that a criminal statute coercing

him to pay a certain class of debts under the penalty of a criminal statute is unenforcible as imprisonment for debt. The respondent, in effect, contends that the nature of the relationship of the parties makes the failure to pay laborers and materialmen under the circumstances a constructive fraud, and that it is such fraud and not the failure to pay laborers and materialmen that the act purports to punish.

In People v. Holder, *supra,* one of the most cited cases on the subject, it is said: "Any legislation that makes it a crime for one to use his own money for any purpose other than the payment of his debts is violative of section 15 of article I of the constitution of this state, which expressly inhibits imprisonment for debt except in cases of fraud. * * * A man's constitutional liberty means more than his personal freedom. It means, with many other rights, his right freely to labor and to own the fruits of his toil. A statute that, in its practical operation, in effect declares that under any contract between the owner of property and a building contractor the payments that may be made to the latter shall not be absolutely his own to do with as he pleases, but shall be held by him in trust to pay debts due by him to certain preferred creditors, is unconstitutional in that it is an infringement upon the inalienable right of contract. * * * The right of contract is, it is true, subject to reasonable police regulation. But the amendment of 1919 is not a valid exercise of that power. * * * It is well settled that the police power cannot be made a cloak under which to overthrow or disregard constitutional rights. It is only when the general welfare, the interests of the public as distinguished from those of individuals, will be protected that the right of contract may be limited by a general exercise of the police power. * * * The payment of debts that may be due laborers or material men is not calculated to conserve the safety, health, or general welfare of the community. There can be nothing so injurious to the public welfare in the

failure of a debtor to pay his just debts as to require an exercise of the police power. In all free governments the good sense of mankind, since the day when imprisonment for debt was abolished, has condemned and frowned down any attempt to coerce the performance of civil obligations by criminal penalties."

In Commercial Nat. Bank of Sturgis v. Smith, 60 S. D. 376, 244 N. W. 521 (1932), it was held that a statute subjecting a contractor to imprisonment for failing to pay subcontractors furnishing labor and materials out of payments received by the contractor from the owner was violative of constitutional provisions inhibiting imprisonment for debt founded on contract. In Peairs v. State, 227 Ark. 230, 297 S. W. 2d 775 (1957), it was held that a criminal statute making it a felony for any contractor to fail or refuse to discharge a laborer's or materialman's lien to the extent of the contract price, without regard to fraud, was unconstitutional as an attempted imprisonment for debt. The Holder and Commercial National Bank cases, among others, were cited in support of the rule. See, also, Meyer v. Berlandi, 39 Minn. 438, 40 N. W. 513, 12 Am. S. R. 663, 1 L. R. A. 777.

The respondent relies upon a line of cases somewhat in conflict with the cases cited by the relator. In State v. Hertzog, 92 S. C. 14, 75 S. E. 374 (1912), the court held that the only reasonable construction of the statute before it is that it makes penal not the mere failure to pay a debt, but the disposition by the contractor of a specific sum of money held by him under a lien so as to defeat the lien. Under such construction the statute was held not to violate the constitutional inhibition against imprisonment for debt except in cases of fraud. The statute in this case created a lien in favor of laborers and materialmen on the money paid by the owner to the contractor, and the defendant was charged and convicted for violating a general statute "which in general terms made a criminal offense the disposition of any personal property upon which a lien exists * * *."

In State v. Williams, 133 Wash. 121, 233 P. 285 (1925), the statute provided that every person contracting to supply labor and materials for which a lien might lawfully be filed who shall receive the full price of his contract or the amount of any account stated thereon shall be deemed to receive the same as the agent of the party with whom the contract was made for the purpose of paying all claims for labor and materials supplied. The court held that the act does not provide for imprisonment for debt but punishes the contractor for his fraud for secreting it or failing to pay it as he should, with intent to deprive or defraud the owner thereof, and has appropriated it to his own use. The court held that it was the fraudulent act and not the indebtedness which is made the determining feature in establishing guilt under the statute.

In Pauly v. Keebler, 175 Wis. 428, 185 N. W. 554 (1921), the statute provided the payments by an owner of property to a contractor were to be a trust fund for the payment of materialmen and laborers entitled to a lien, and made the appropriation of such funds by the contractor without payment of the claims of the lienholders embezzlement not violative of the constitutional provision inhibiting imprisonment for debt. In the course of the opinion, the court said: "Without some statute the large class of persons referred to in sec. 4418, as to embezzlement, would not be criminally liable for the misappropriation of funds. * * * If it is within the legislative power to enact that moneys thus received from one class of persons for the benefit of another class are trust funds and are to be treated accordingly, there is clearly no valid objection to imposing adequate punishment for a violation of the trust."

The statute before us requires no finding of fraud, nor does it purport to establish the money paid to the contractor as a lien, trust, or other fiduciary relation. The cases relied on by relator hold that the Legislature may not, under a proper application of the police power,

provide that money paid under contract is anything other than the exclusive property of the payee. See People v. Holder, *supra*. On the other hand, the authorities cited by respondent hold that it is within the police power to create a lien or establish a fiduciary relationship in the money paid to the contractor and provide criminal punishment for a breach. See Pauly v. Keebler, *supra*. But we are not here concerned with the conflict in the two lines of cases since neither sustains the position of the respondent.

It is argued that the nature of the transaction and the relationship of the parties to each other is sufficient to establish the fraud necessary to sustain the act. We again point out that the statute does not require a finding of fraud, nor does the information charge fraud. The act as written permits a finding of guilt whether or not any fraud was involved. "Wilful and unjust failure to perform a contract does not necessarily connote fraud. Bad faith is the test. One may wilfully or intentionally abandon a contract under a bona fide claim of right without being subject to a charge of fraud, though in fact the other party had not impaired his right to require performance. In addition to the abandonment being wilful, it may also be unjust without being fraudulent. Justice is rendering to every man his due. An act may be wilful and unjust ethically and legally and yet not fraudulent, because it may be done with such right intention as to completely negative the suggestion of actual fraud, and the grounds upon which the doer thought it right may be too rational for the law to impute fraud. * * * But injustice and fraud and unjust and fraudulent are far from being convertible terms. Fraud is corrupt injustice. No greater injustice has ever been suffered than that inflicted by men not only incapable of fraud, but who in the doing of their unjust acts were impelled by zeal for righteousness as they conceived it." Ex parte Hollman, 79 S. C. 9, 60 S. E. 19, 21 L. R. A. N. S.

242, 14 Ann. Cas. 1105. See, also, Pauly v. Keebler, *supra.*

In Bailey v. Alabama, 219 U. S. 219, 31 S. Ct. 145, 55 L. Ed. 191, the defendant was charged with the following statutory offense: Defendant with intent to injure or defraud his employer entered into a written contract to perform labor or services for the employer and obtained thereby the sum of $15 from the employer, and afterwards with like intent, and without just cause, failed or refused to perform such services or to refund the money. Defendant was convicted and sentenced to pay a fine, and in default thereof, to 20 days at hard labor and 116 days in jail on account of the costs. A former statute had been amended to provide that the failure or refusal to perform the service contracted for, or to refund the money obtained, without just cause, should be prima facie evidence of the intent to injure or defraud. The court held: "The money received and repayable, nothing more being shown, constitutes a mere debt. The asserted difficulty of proving the intent to injure or defraud is thus made the occasion for dispensing with such proof, so far as the prima facie case is concerned. And the mere breach of a contract for personal service, coupled with the mere failure to pay a debt which was to be liquidated in the course of such service, is made sufficient to warrant a conviction. * * * It is no answer to say that the jury must find, and here found, that a fraudulent intent existed. The jury by their verdict cannot add to the facts before them. If nothing be shown but a mere breach of a contract of service and a mere failure to pay a debt, the jury have nothing else to go upon, and the evidence becomes nothing more because of their finding. Had it not been for this statutory presumption, supplied by the amendment, no one would be heard to say that Bailey could have been convicted. * * * It is not sufficient to declare that the statute does not make it the duty of the jury to convict, where there is no other evidence but the breach

of the contract and the failure to pay the debt. The point is that, in such a case, the statute authorizes the jury to convict. * * * The 'difficulty,' which admittedly the amendment was intended to surmount, did not exist where, natural inferences sufficed. Plainly the object of the statute was to hit cases which were destitute of such inferences, and to provide that the mere breach of the contract and the mere, failure to pay the debt might do duty in their absence. * * * It is apparent that a constitutional prohibition cannot be transgressed indirectly by the creation of a statutory presumption any more than it can be violated by direct enactment. The power to create presumptions is not a means of escape from constitutional restrictions." See, also, Pollock v. Williams (Fla.), 322 U. S. 4, 64 S. Ct. 792, 88 L. Ed. 1095; Morrison v. California, 291 U. S. 82, 54 S. Ct. 281, 78 L. Ed. 664; Bandini Petroleum Co. v. Superior Court, 284 U. S. 8, 52 S. Ct. 103, 76 L. Ed. 136, 78 A. L. R. 826.

It is true, of course, that we are not here dealing with presumptions in the case before us. We do say that section 52-119, R. R. S. 1943, is unconstitutional in that it requires no proof of fraud. Nor can the failure of the statute to require proof of fraud be taken outside the constitutional inhibition against imprisonment for debt by permitting the jury to consider the nature of the transaction, the moral duty of the relator to pay subcontractors, or even his contract with the property owner to pay them. If a statutory presumption appearing in a statute cannot afford a basis for a conviction under the circumstances shown, how can it be said that a jury's conclusion as to the nature of the relationship without even a fiduciary relationship being established by statute is sufficient to sustain an otherwise unconstitutional statute. If such a procedure is acceptable in the instant case, there would be no reason why a statute stating any debtor-creditor relationship to be criminal would be constitutional if the jury found payment was withheld unjustifiably and with a willful intent. We submit that

section 52-119, R. R. S. 1943, is unconstitutional in that it fails to require a finding of fraud and permits a prosecution for a criminal offense for the failure to pay a contractual obligation without proof of fraud. A writ of habeas corpus should have been granted.

REVERSED AND REMANDED.