**In the Matter of Isaac DLOOGOFF, Bankrupt.**

**Geraldine DEVANEY, Plaintiff-Appellee,**

**v.**

**Isaac DLOOGOFF, Defendant-Appellant.**

**No. 79–1036.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 8, 1979.

Decided June 14, 1979.

Robert V. Broom, Legal Aid Society, Inc., Omaha, Neb., for appellant.

Clayton H. Shrout of Shrout, Christian, Krieger & Merwald, Omaha, Neb., for appellee.

Before HEANEY, STEPHENSON and McMILLIAN, Circuit Judges.

STEPHENSON, Circuit Judge.

Defendant-appellant Isaac Dloogoff appeals from an order of the district court[1] affirming a determination by the bankruptcy judge that a debt owed by Dloogoff to plaintiff-appellee Geraldine Devaney is nondischargeable in bankruptcy under section 17(a)(4) of the Bankruptcy Act, 11 U.S.C. § 35(a)(4).[2] Because the contractual rela-

---

[1]. The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska.

[2]. Section 17 provides in pertinent part:
(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as * * * (4) were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity * * *.
Devaney's Amended Objection to Discharge makes clear that she relies on the "fraud" of Dloogoff while acting in a "fiduciary capacity." Our discussion is so limited.

tionship of Dloogoff and Devaney does not fall within the ambit of section 17(a)(4), we are required to reverse the district court.

The debt owed Devaney arose from a contract entered into between Devaney and Dloogoff, doing business as Quality Garage Builders, in June 1976. The agreement obligated Dloogoff to furnish all labor and materials necessary to build a garage and driveway on Devaney's property. Devaney was required to make a downpayment of $425 before work began and to pay the $3,000 balance in part when the concrete foundation was finished and in part when the structure was completed. In time, workmen came to the Devaney lot and constructed a garage in stages; the work was done by September 1976, when Devaney paid Dloogoff in full.

Unbeknown to Devaney, the payments she had made to Dloogoff were repaid by Dloogoff to several subcontractors who had actually performed the work and supplied the materials used in constructing the garage and driveway. Further, consistent with Dloogoff's past practices in dealing with the subcontractors, the payments made by Devaney were not applied to the indebtedness created by the supply of labor or materials toward the construction of her garage. Rather, whatever Devaney paid Dloogoff and Dloogoff in turn paid the subcontractors was credited against what Dloogoff owed the subcontractors for other jobs subcontracted to them.[3] By October 1976 only John Yohe, the carpenter, had been paid. Sutherland Lumber Company and "C" Construction Company were still owed for labor and materials supplied in construction of Devaney's garage and driveway, although Dloogoff had settled other accounts with these two subcontractors.

The telephone company disconnected Dloogoff's telephone in October for failure to pay its service charges. Immediately thereafter the garage construction business went into a slump since most of Dloogoff's business had been initiated by telephone. Dloogoff could not pay Sutherland or "C"

Construction, and, consequently, both firms filed mechanic's liens against Devaney's property in December 1976. Devaney paid $2,701.17 to remove them.

Dloogoff filed in bankruptcy in May 1977. Devaney filed an objection to discharge of debt in September and a hearing was held in December; the bankruptcy judge found that under section 17(a)(4) the debt was nondischargeable and entered an order in accordance with his decision. The district court affirmed.

■ On appeal, Dloogoff makes the argument that the courts below erred in their determination that the debt was nondischargeable under section 17(a)(4). Insofar as relevant, section 17 proscribes release of debts created by the fraud of the bankrupt while acting as a fiduciary of the creditor. The statute has been interpreted to require technical trust relationships rather than those implied from contract. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 79 L.Ed. 393 (1934). Additionally, the trust relationship must exist before the incident creating the contested debt and apart from it. It is not enough that the trust relationship spring from the act from which the debt arose. *Id.*

Dloogoff contends that he was not a fiduciary within the meaning of the statute and, additionally, that the bankruptcy court committed reversible error by determining nondischargeability without making findings of fact on the issue of fraud. Conversely, Devaney asserts that the trend of recent authority would support a finding that Dloogoff acted in a fiduciary capacity and, also, that the findings of the bankruptcy judge on the fraud issue are legally sufficient.

It is true, as Devaney maintains, that several recent decisions provide authority for the proposition that similar debts are nondischargeable. One of the most recent of these is *Allen v. Romero*, 535 F.2d 618 (10th Cir. 1976). There the court found the requisite fiduciary relationship between the

---

**3.** James Feekin, owner of "C" Construction, testified that monies received from Dloogoff were applied to the accounts "closest to lien time."

debtor-contractor and the creditor by relying on a New Mexico licensing statute for construction contractors, N.M.Stat.Ann. § 67–35–26 (1953). The court found that the licensing scheme clearly imposed a fiduciary duty on the debtor-contractor, who had been advanced money for the payment of subcontractors.[4] *Allen v. Romero, supra,* 535 F.2d at 621. *Accord, Hamby v. St. Paul Mercury Ins. Co.,* 217 F.2d 78, 80 (4th Cir. 1954) (Virginia case law clearly made realtor-client relationship fiduciary in nature); *Besroi Constr. Corp. v. Kawczynski,* 442 F.Supp. 413, 417 (W.D.N.Y.1977) (New York Lien Law held to impose fiduciary duties on general contractors); *Reed v. Angelle,* 425 F.Supp. 823, 826 (W.D.La.1977) (Louisiana law relied on in finding that fiduciary relationship existed); *Clark & Rapuano, Inc. v. Morris Ketchum, Jr. & Assocs.,* 409 F.Supp. 743, 745 (S.D.N.Y.1975) (New York law). *Contra, Schlecht v. Thornton,* 544 F.2d 1005, 1007 (9th Cir. 1976) (Oregon law imposing trusteeship on employer insufficient to establish 17(a)(4) fiduciary relationship).

In each of these cases the court looked to state law to determine the nature of the relationship between the contracting parties. *Cf. Jaffke v. Dunham,* 352 U.S. 280, 281, 77 S.Ct. 307, 1 L.Ed.2d 314 (1957) (whether trust established a question of state law in section 70(a)(4), 11 U.S.C. § 110(a)(4) bankruptcy proceeding). In this case the parties have devoted part of their briefs to the effect of Neb.Rev.Stat. § 52–123 (1974).[5] Section 52–123 makes it unlawful for one receiving money under a construction contract to fail to apply it to the claims of laborers and materialmen who would have the right to file a lien. It is similar to statutes considered in like cases. *See, e.g., Reed v. Angelle, supra,* 425 F.Supp. at 826 n.1.

The Nebraska Supreme Court considered a precursor to this statute in *Norton v. Janing,* 182 Neb. 539, 156 N.W.2d 9 (1968). There the court held the statute was unconstitutional as an attempted imprisonment for debt, contrary to the Nebraska constitution. *Id.,* 156 N.W.2d at 14. However, the court did point out that the statute did not make the amounts received by the general contractor from the property owner a trust fund. *Id.,* 156 N.W.2d at 11. In *State v. McConnell,* 201 Neb. 84, 266 N.W.2d 219

---

**4.** The *Romero* court concluded, in satisfaction of the *Davis* requirement, that the licensing statute had created the fiduciary relationship before the misapplication of funds. *Allen v. Romero, supra,* 535 F.2d at 621–22; *see Davis v. Aetna Acceptance Co., supra,* 293 U.S. at 333, 55 S.Ct. 151. Assuming arguendo that a fiduciary relationship of the character necessary to satisfy section 17(a)(4) existed in this case through the action of Neb.Rev.Stat. § 52–123 (1974), discussed later, it is difficult to see how it could have existed before the acts creating the debt. The trust must exist before the debt. *Davis v. Aetna Acceptance Co., supra,* 293 U.S. at 333, 55 S.Ct. 151.

**5.** Neb.Rev.Stat. § 52–123 (1974) provides:

Failure to apply payments received on lawful claims; unlawful; failure to discharge lien; prima facie evidence of intent to deprive or defraud. It shall be unlawful for any person, firm, or corporation who has taken a contract for the erection, improvement, repair, or removal of any house, mill, manufactory, or building of any kind for another, and has received payment in whole or in part upon such contract, to fail to apply the money so received, or so much thereof as may be necessary for that purpose, in payment of the lawful claims of such laborers or materialmen as could otherwise have a right to file a

laborers' or materialmen's lien against such house or other structure, with the intent thereby to deprive or defraud the owner or person so paying the person, firm or corporation receiving payment, of his funds without discharging the liens, unless such person, firm or corporation, taking such contract, shall have received and delivered to the owner of the property the written waiver of lien from all persons who otherwise would have a right to file a lien thereon. In any prosecution under sections 52–123 and 52–124 of the person, firm, or corporation so receiving payment, when it shall be shown in evidence that any lien for labor or materials existed in favor of any laborer or materialman and that such lien has been filed within the time and at the place as provided by law for the filing of such liens and that such person, firm, or corporation charged has received payment without discharging the lien to the extent of the funds received by him, the fact of acceptance of such payment without having discharged the lien within ten days after receipt of such payment shall be prima facie evidence of intent to deprive or defraud on the part of the person, firm, or corporation so receiving payment.

(Neb. 1978), the court considered an amended version of the statute it had ruled on in *Janing*. The trial court in *McConnell* had construed monies received under a construction contract to be held in trust; the Supreme Court of Nebraska quoted its earlier holding in *Janing* to the effect that section 52–123 does not create a trust and reversed the district court.

The language of the Nebraska Supreme Court construing section 52–123 is unequivocal. No express trust arises by its action. Section 17(a)(4) does not operate in the absence of an express trust. *Davis v. Aetna Acceptance Co., supra*, 293 U.S. at 333, 55 S.Ct. 151. Therefore, since Dloogoff did not occupy a fiduciary relationship vis-a-vis Devaney, section 17(a)(4) will not work to make the debt in this case nondischargeable.

Having reached the conclusion that there was no fiduciary relationship, it is unnecessary to consider the question of fraud under section 17(a)(4). The language of section 17(a)(4) requires the fraud while the debtor *acted in a fiduciary capacity*. The order of the district court affirming the bankruptcy judge's determination of nondischargeability is reversed, and we remand with instructions to enter judgment for Dloogoff.

Reversed and remanded.