**In re Hardy Cornelius WARMACK and Phyllis Castellaw Warmack, Debtors.**

**CHASE MANHATTAN FINANCIAL SERVICES, INC., Plaintiff,**

v.

**Hardy Cornelius WARMACK and Phyllis Castellaw Warmack, Defendants.**

**Bankruptcy No. 87–2656–8P7. Adv. No. 87–312.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

July 12, 1988.

**400**

Sharyn B. Zuch, Shackleford, Farrior, Stallings & Evans, P.A., Tampa, Fla., for plaintiff.

Raymond C. Farfante of Straske, Farfante, Segall & Arcuri, P.A., Tampa, Fla., for defendants.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case, and the matter under consideration involves the right of Hardy Cornelius Warmack and his wife, Phyllis Castellaw Warmack, to a general bankruptcy discharge, which right is challenged by the Plaintiff, Chase Manhattan Financial Services, Inc. (Chase). In addition to objecting to the discharge of the Debtors, Chase also asserted several claims of nondischargeability. The complaint filed by Chase consisted of four separate counts. The claim in Count I is based on § 523(a)(2)(B) and alleges that the debt owed to Chase by the Debtors should be declared to be nondischargeable on the basis that the Debtors obtained money from Chase through the use of false financial statements. The claim set forth in Count II of the complaint seeks a determination of nondischargeability pursuant to § 523(a)(2)(A) based on the allegation that the Debtors obtained money from Chase by false pretenses regarding certain electronic equipment which was pledged by the Debtors as collateral for the loan. The claims set forth in Counts III and IV are the claims which, according to Chase, warrant a denial of the general bankruptcy discharge of both the Debtors pursuant to § 727(a)(4)(A) and § 727(a)(5) respectively; the former based on the allegation that these Debtors made a false oath in connection with their bankruptcy, and the latter based on the allegation that the Debtors have failed to explain satisfactorily the loss of assets and liabilities.

The facts as established at the final evidentiary hearing which are relevant and germane to the resolution of the issues are as follows:

At the time relevant to the matters under consideration, the Debtors applied for and obtained a loan from Chase. In connection with this transaction, both Debtors signed a loan application in which they listed, among others, the following assets with the following values allocated to each:

| | | |
|---|---|---|
| A. | Stocks and Bonds | $37,312.00 |
| B. | Silver and Jewelry | $23,000.00 |
| C. | Elec [sic] and Camera | $ 2,000.00 |
| D. | Household Goods | $18,000.00 |

The amount borrowed, the sum of $178,400.00, was for the purpose of financing the purchase of a 37-foot Fisher sailboat from British Yachts, Ltd. In connection with this transaction, the Debtors submitted to Chase the copy of the Sales Agreement relating to the purchase of the vessel. The Sales Agreement in addition to other items described certain specific electronic equipment which was to be installed on the vessel and the price of which was included in the overall purchase price of the vessel. The loan transaction was closed on December 31, 1984, at which time the Debtors delivered to Chase their promissory note in the principal amount of $178,400.00 and a Security Agreement which granted Chase a security interest not only in the vessel, but also in the electronic equipment referred to above. It is without dispute that Chase issued its check in the amount of $178,400.00, naming the Debtors and British Yachts, Ltd., as co-payees of the check.

The Debtors having defaulted on their obligation under the note, Chase proceeded

to recover its collateral and without resistance of the Debtors did, in fact, repossess the vessel in March of 1986, and after repossession, ultimately sold the vessel for $82,000.00. It should be noted that at the time of repossession, the electronic equipment was not on the boat and was never recovered by Chase.

On September 18, 1987, the Debtors filed a Voluntary Petition for Relief under Chapter 7. The schedules of their assets verified by them and submitted with their petition did not include certain items of clothing and jewelry, both of which were scheduled on the loan application as part of their assets submitted to Chase. Moreover, the values as stated on their schedule of assets were significantly less than those stated by them for the same assets on the loan application. For instance, on the Schedule B–4, the Debtors claimed their clothing and household goods as exempt pursuant to Fla.Stat. 222.05 and valued them at $435.00 and $650.00 respectively. In due course Chase filed an objection to the claim of exemptions, alleging, inter alia, that the values attributed to the items claimed as exempt were substantially below their true value. This Objection was sustained by an Order entered by this Court on January 5, 1988, which found that the value of the Debtors' personal property claimed as exempt was $4,683.00.

In addition the Debtors failed to list on their schedule of assets stocks and bonds valued by them on the loan application at $37,312.00 or silver valued at $23,000.00. It further appears that at the time Mr. Warmack applied for a loan and filed the loan application he was obligated for child support, which obligation was not disclosed by him on the loan application.

These are basically the operating facts based on which Chase contends in the alternative first that the Debtors are not entitled to general bankruptcy discharge in that they committed a false oath in bankruptcy and that they have failed to satisfactorily explain the loss of certain assets. Both these charges relate to the assets which are listed on the loan application, specifically stocks, bonds, silver, jewelry and the electronic equipment mentioned earlier which was to have been put on the vessel, but which was never recovered by Chase.

In addition to the claim that the Debtors should be denied their discharge, Chase also alleges that the Debtors owe Chase $100,000.00, which represents a claim for deficiency remaining after Chase disposed of the collateral, and this amount should be determined to be a nondischargeable obligation.

Of course, the threshold question which this Court is called upon to resolve is the claim of Chase based on § 727 of the Bankruptcy Code, pursuant to which Chase seeks an order denying the general bankruptcy discharge for these Debtors. This is so because if Chase prevails on these claims, it is unnecessary to consider the claims of nondischargeability set forth in Counts I and II of the complaint.

■ Considering first the charge of false oath in bankruptcy, it is clear and is undisputed that the Debtors did not specifically schedule clothing or jewelry, and the value stated by them was significantly less than the value stated by them on the loan application. In addition it is equally clear that the Debtors' schedule of assets failed to disclose any interest in any stocks or bonds, assets which were also listed on their loan application. This record leaves no doubt that either the Debtors grossly overvalued their assets on the loan application or undervalued the same assets on the schedule of assets filed with their Petition. The fact of the matter is this Court is satisfied that the values stated by the Debtors on their schedules were incorrect and the personal property scheduled had, in fact, a value of at least $4,860.00, the valuation furnished by the appraiser for Chase in conjunction with Chase's objection to the claim of exemptions.

■ In support of their contention that the value on the silver was made in good faith, the Debtors contend that when they filled out the loan application they assumed incorrectly that the silver was sterling, when in fact it turned out to be inexpensive and silverplated. A discrepancy of an al-

leged value of $23,000.00 either has not been satisfactorily explained or as noted its value was grossly overstated on the loan application. This fact in turn might form the basis for the declaration of nondischargeability of a debt, although falls short of what is required to deny a general bankruptcy discharge. This is so because in order to prevail on this claim, it was the burden of Chase to establish a specific fraudulent intent, which proof is simply lacking in this instance regarding the claim of false oath. *Williamson v. Fireman's Fund Insurance Company,* 828 F.2d 249, 251 (4th CA 1987) Concerning the charge that the Debtors failed to satisfactorily explain the loss of assets to meet their liabilities, this Court is also satisfied that the proof presented in support of the claim is also lacking the clear persuasive proof which would warrant the denial of discharge pursuant to § 727(a)(5).

This leaves the question of the claims of nondischargeability set forth in Count I and II of the complaint.

■ It should be noted at the outset that valuation of assets placed on a loan application basically represents a subjective opinion of the declarant, and ordinarily if it turns out to be incorrect there would not be a valid basis to infer subjective opinion of the declarant, and ordinarily if it turns out to be incorrect there would not be a valid basis to infer falsity or fraud. However, this is not the case when the overvaluation is so utterly without foundation that one cannot but conclude that the valuation was not merely puffing, but was stated for the purpose of inducing the lender to grant the loan when the loan applicant knew that it did not have a value even close to what was stated by the borrower on the loan application.

■ In this particular instance, the Debtors listed on the loan application as part of their assets stocks or bonds valued at $37,312.00 and silver and jewelry at $23,000.00 and household goods of $18,000.00. On the schedule of assets filed in the bankruptcy court, the Debtors valued all these assets at $1,085.00. In light of significant discrepancies between the values, this Court is constrained to conclude that the Debtors willfully and knowingly inflated the values on the loan application with the purpose of inducing Chase to grant the loan a very significant amount. More importantly, however, it is now clear that in his loan application, Mr. Warmack failed to schedule as one of his liabilities a monthly child support obligation. An omission of a significant liability is certainly a material omission and would be sufficient grounds to declare the debt nondischargeable under § 523(a)(2)(B).

It is well settled law that to prevail on this claim, it is sufficient for a creditor to establish that there was a false representation on the financial statement made with actual intent to defraud on which the lender relied and the reliance was reasonable. *In re Ricks,* 8 B.R. 860 (Bkrtcy.Fla.1981). The explanation of the Debtor, Mr. Warmack, that the loan application was filled out by an officer of Chase and he merely signed the same is unacceptable as he is certainly responsible for the statements contained in the loan application by virtue of the fact that with his signature he adopted it and warranted that the facts stated in the application were correct. In light of the gross overstatement of values and a knowing omission of the child support obligation, this Court is satisfied that the claim of Chase based on § 523(a)(2)(B) has been established with the requisite degree of proof, but the claims of Chase based on § 727(a)(4), (a)(5), and § 523(a)(2)(A) should be dismissed with prejudice.

Based on the foregoing, this Court is satisfied that the Debtors' obligation to Chase is a nondischargeable obligation pursuant to § 523(a)(2)(B).

A separate final judgment shall be entered accordingly.