In re Augustine **CALVO** and Linda A. Calvo, Debtors.

**BOMBARDIER CREDIT, INC., Plaintiff,**

v.

Augustine **CALVO, Defendant.**

**Bankruptcy No. 89–3267–8P7. Adv. No. 89–346.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

March 30, 1990.

Robert E. Burguieres, Tampa, Fla., for plaintiff.

Rodney L. Dillon, Sarasota, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 7 case and the matter under consideration is the dischargeability vel non of a debt owed to Bombardier Credit, Inc. (Bombardier) by Augustine Calvo (Debtor). Bombardier filed a Complaint seeking an exception to discharge pursuant to § 523(a)(2)(B) and § 523(a)(4) of the Bankruptcy Code.

In Count I of the Complaint, Bombardier alleged that the Debtors sold inventory encumbered by the security interest of Bombardier without remitting the sale proceeds as was required by the inventory financing arrangement. According to Bombardier, these out-of-trust sales constituted a breach of the Inventory Security Agreement, as well as "misappropriation" or "fraud" and therefore, the Debtor's debt to Bombardier should be declared to be non-dischargeable by virtue of § 524(a)(4) of the Bankruptcy Code. In Count II of the Complaint, Bombardier alleged that it extended credit to the Debtor based on a materially false Personal Financial Statement submitted by the Debtor on which Bombardier reasonably relied. As the result, Bombardier contends it suffered damages for which the Debtor is liable, and this liability should be excepted from the overall provision of the bankruptcy discharge by virtue of § 523(a)(2)(B).

The facts as developed at the final evidentiary hearing which are relevant to the issues raised are as follows:

At the time relevant, Bombardier was, and still is, in the business of providing inventory financing for various businesses, and the Debtor was the president and one-third owner of River City Marine, Inc., a Florida corporation doing business as Marine Mart. Marine Mart was in the business of selling new and used boats, motors, engines, trailers, and other products associated with recreational boating. In 1988, the Debtor sought to secure financing from Bombardier on behalf of Marine Mart to purchase inventory for the business.

In order to obtain financing from Bombardier, the Debtor executed an Inventory Security Agreement, and he completed a Personal Financial Statement. (Plaintiff's Exh. Nos. 2 and 1). On his Personal Finan-

cial Statement, the Debtor stated that his assets included $8,500 worth of notes receivable and a 52–foot sailboat worth $75,000. On Page 2 of his Personal Financial Statement, the Debtor valued this same boat at over $85,000. According to the Debtor's Personal Financial Statement, he had assets worth $291,800 and a net worth of $107,506. The other co-owners of Marine Mart had combined assets of $153,250, and a combined net worth of $118,690.

Upon receipt of the personal guarantees and the Personal Financial Statement of the principals of Marine Mart, Bombardier initially approved a $200,000 credit line for Marine Mart. Later on, without receiving any additional financial reports or statements, Bombardier increased the line of credit granted to Marine Mart to $400,000.

The agreement between Marine Mart and Bombardier provided that Bombardier was to provide financing for the purchase of an inventory of new boats for Marine Mart. When a boat financed by Bombardier was sold, Marine Mart was to remit the sale proceeds to Bombardier, less the profit provided for Marine Mart. It is without dispute that Marine Mart did not always remit portions of the sale proceeds to Bombardier after a boat financed by Bombardier was sold. Bombardier contends that Marine Mart is out of trust in the amount of $170,100, and the Debtor is liable for this amount by virtue of his personal guarantee.

The Debtor filed his Petition for Relief under Chapter 7 of the Bankruptcy Code on May 12, 1989, and filed with his Petition his Schedules of Assets and Liabilities. In his Schedule of Assets, the Debtor included his 52–foot boat, the same boat he reported as an asset on the Personal Financial Statement and claimed the same as part of his exemptions.

In support of its claims, Bombardier contends that it is firmly established that the Personal Financial Statement submitted by the Debtor was materially false in that the value of the boat was substantially less. than $75,000 or $85,000, the values stated by the Debtor on his Personal Financial Statement. Bombardier contended that the

Personal Financial Statement also was false in that the Debtor scheduled as an asset a $8,500 note as receivable when, in fact, the Debtor did not have such a promissory note. In addition, of course, Bombardier contends that it reasonably relied on a Personal Financial Statement submitted by the Debtor when it extended credit to Marine Mart and, based on his personal guaranty, the Debtor is liable under this guaranty, and this liability should be declared to be nondischargeable by virtue of § 523(a)(2)(B). In the alternative, Bombardier contends that the debt should also be declared to be nondischargeable by virtue of § 523(a)(4). This contention is based on the allegation that the Debtor breached the Inventory Security Agreement and committed misappropriations or fraud.

█ Before considering Bombardier's contentions, it should be noted at the outset that the underlying purpose of the Bankruptcy Code is to give the debtor a new opportunity in life and a clear field for future efforts, unhampered by pressures of pre-existing debt. *Lines v. Frederick,* 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970), *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). Congress designed the discharge provision of the Bankruptcy Code to give the debtor a fresh start, free from obligations associated with previous business misfortunes. Therefore, exceptions to discharge are construed strictly against the creditor and liberally in favor of the debtor, and the creditor must prove his case by clear and convincing evidence. *In the Matter of Bonanza Import and Export, Inc.,* 43 B.R. 577 (Bankr.S.D. Fla.1984), *In re Garner,* 881 F.2d 579 (8th Cir.1989).

Considering first the claim of nondischargeability based on § 523(a)(2)(B), the Plaintiff has the burden of proving, by clear and convincing evidence, that the debtor obtained money or property by the use of a materially false written statement concerning his financial condition on which the creditor reasonably relied and which the debtor published with intent to deceive.

■ It is undisputed that the Debtor submitted a Personal Financial Statement to Bombardier regarding his financial condition in order to induce Bombardier to grant a line of credit to purchase inventory. Pursuant to his Personal Financial Statement, the Debtor reported that his boat was worth $75,000 and $85,000, and eleven months later he stated under penalty of perjury on his bankruptcy schedules that this same boat was of little or no value. A boat appraisal expert valued the boat at $4,500. This Court is satisfied that the boat was in substantially the same condition when the Debtor valued it for his Personal Financial Statement, and when he valued it for his bankruptcy schedules, and when it was valued by the expert who appraised the boat.

This Court has previously held that the valuation of assets on a loan application is the declarant's subjective opinion, and there is generally no basis to infer fraud if the valuation turns out to be incorrect. However, when the valuation is so completely without foundation, one can only conclude that the valuation was beyond mere puffery, and instead was stated for the primary purpose of inducing the lender to lend money to the applicant. *In re Warmack*, 88 B.R. 399 (Bankr.M.D.Fla. 1988). Based on the above facts, this Court is satisfied that the Debtor's valuation of the boat on his Personal Financial Statement was, in fact, materially false.

The Debtor also claimed on his Personal Financial Statement that he had $8,500 in notes receivable. However, evidence at trial revealed that the Debtor did not have any such notes receivable. Instead, the Debtor based this assertion on loans he made to people up to ten years ago, and for which he has no written promise of repayment. Testimony at trial clearly showed that it is unlikely that the Debtor will ever receive this money, or that he even expects to receive it. On the basis of these facts also, this Court finds that the Debtor submitted to Bombardier a materially false statement regarding his financial condition in order to obtain financing for Marine Mart.

Based on the foregoing, this Court is satisfied that Bombardier's reliance on the Debtor's financial statement was reasonable, and that the Debtor published the financial statement with intent to deceive Bombardier. Therefore, all of the elements of § 523(a)(2)(B) have been met, and the debt owed to Bombardier by the Debtor shall be excepted from the overall protective provisions of the bankruptcy discharge.

In light of the foregoing consideration, ordinarily it would not be necessary to consider the alternative claim of Bombardier based on § 523(a)(4) of the Bankruptcy Code. However, in order to avoid any further misunderstanding by inventory financiers, the merits of this claim should also be briefly addressed.

■ First, it is clear that a violation of the Personal Financial Agreement by itself can never form the basis of a viable claim of nondischargeability. Second, to meet the requirements of § 523(a)(4), it must be established with clear and convincing evidence that the Debtor was guilty of defalcation while acting in a fiduciary capacity, and his fiduciary capacity was established by an express or technical trust. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *Greyhound Lines, Inc. v. Thurston*, 18 B.R. 545 (Bankr.M.D.Ga.1982); *In re Angelle*, 610 F.2d 1335 (5th Cir.1980); and *In re Dloogoff*, 600 F.2d 166 (1979). In this case there was no evidence to show that an actual trust was created by a trust document. There was neither an identifiable res, a trustee, or beneficiaries. This record is totally devoid of any evidence which shows that there was an actual trust established between Bombardier and this Debtor or that the Debtor was guilty of any defalcation while acting in a fiduciary capacity. It is clear, therefore, that the claims asserted against the Debtor, a corporate officer who entered into an inventory financing arrangement which was violated, do not support a viable claim under § 523(a)(4).

Having considered the record, this Court is satisfied that the debt owed by the Debtor to Bombardier is nondischargable by

virtue of § 523(a)(2)(B) of the Bankruptcy Code.

A separate Final Judgment will be entered in accordance with the foregoing.