In re David J. PITNEY, a/k/a Dave Pitney, Rose Y. Pitney, a/k/a Rose Pitney, R.Y. Pitney, and Rosalyn Y. Pitney, Debtors.

Jules M. HANKEN, Plaintiff,

v.

David J. PITNEY, Defendant.

Bankruptcy No. 89–8393–8P7.
Adv. No. 90–086.

United States Bankruptcy Court,
M.D. Florida.
Tampa Division.

Sept. 24, 1990.

Larry D. Goldstein, St. Petersburg, Fla., for plaintiff.

A. Paul Molle', Seminole, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case and the matter under consideration is the dischargeability vel non of a debt allegedly due and owing by David J. Pitney (Debtor) to Jules M. Hanken (Plaintiff). Prior to the trial, counsel of record for the Debtor filed a Motion To Withdraw, which was granted, and the Debtor proceeded to try this case in proper person.

The Complaint, the legal sufficiency of which was never challenged, sets forth three distinct claims of nondischargeability. Count I is based on § 523(a)(4) of the Bankruptcy Code and charges that the Defendant, acting in a fiduciary capacity, commit-

ted fraud or defalcation or larceny. In Count II, which is based on § 523(a)(2)(A), the Plaintiff contends that the Defendant obtained money from the Plaintiff by false pretenses, by false representation, or by actual fraud. The claim set forth in Count III is based on the Plaintiff's contention that the Defendant willfully and maliciously intended to cause injury to the Plaintiff or to the Plaintiff's property, and, therefore, the debt owed to the Plaintiff should be excepted from the general discharge pursuant to § 523(a)(6). Based on the foregoing, the Plaintiff sought a judgment against the Defendant in the amount of at least $7,000, plus interest, costs and attorney fees, and a declaration that the debt is nondischargeable.

The facts relevant to the resolution of the issues raised as established at the final evidentiary hearing are as follows:

At the time relevant to this controversy, the Debtor was a licensed mortgage broker employed by Anchor Mortgage Corporation of Florida, Inc. (Anchor Mortgage), and was also the principal of Pitney Mortgage Co., Inc. Prior to the events leading up to the transaction which is the basis of the Plaintiff's claim of nondischargeability, the Plaintiff invested in first mortgages encumbering several different properties primarily on residential homes located in St. Petersburg, Florida. Upon the recommendation of a banker, the Plaintiff contacted the Debtor and discussed the possibility of investing in second mortgages on residential properties. It was generally understood that the property in which the Plaintiff was interested in investing in had to have a loan-to-value ratio of 75% and was to be located in certain generally described areas in St. Petersburg, Florida.

It appears that the Debtor agreed to assist the Plaintiff to find a residential property owner who wanted to borrow funds secured by a second mortgage. The Defendant located a property located at 5201 15th Avenue, South, in St. Petersburg, Florida, but it appears that ultimately, the $7,000 invested by the Plaintiff was secured by a second mortgage on the property located at 744 15th Avenue, South, in St. Petersburg, Florida. It is without dispute that the only funds the Debtor received from this transaction were his commission of $420. (Debtor's Exh. Nos. 1 and 2).

The mortgage note executed by the property owner called for payments of $105 per month for one year, and the remaining payments were to then balloon and become payable in full. (Plaintiff's Exh. No. 4). It further appears that the Plaintiff received regular, albeit late, monthly payments for approximately one year, when the mortgage loan fully matured, but the mortgagor defaulted and failed to pay the amount which became due upon maturity.

There is nothing in this record to establish what amount of money the Plaintiff received on his second mortgage during the time the mortgage was in good standing. There is also nothing in this record to establish the current outstanding balance due and owing on the second mortgage. Soon after the Plaintiff stopped receiving payments on the second mortgage, the holder of the first mortgage on the property, Home Savings and Loan Association, instituted a foreclosure action, and the property was ultimately sold at the foreclosure sale. The Plaintiff received nothing on the remaining balance due on his second mortgage.

There is evidence in this record that at the time the Plaintiff loaned the money and received the mortgage, the property had a value sufficient to cover the first and second mortgages, but due to the drug infestation of the neighborhood, the property rapidly deteriorated in value. This deterioration, along with the fact that many residences in the neighborhood became uninhabitable, appears to have been the primary cause of a default on the mortgages.

The Plaintiff, who is a sophisticated investor in real estate, and who had several prior satisfactory dealings with the Debtor, attended the closing in person and certainly had the benefit of all closing papers and documents pertaining to this particular transaction. While there is some dispute, it appears that at the closing, the mortgage loan application, which clearly stated the

address of the subject property as 744 15th Avenue, South, St. Petersburg, Florida, was available. (Defendant's Exh. Nos. 1 and 2). There is also clear evidence in this record to show that a document evidencing insurance, which indicated the address of the subject property was 744 15th Avenue, South, St. Petersburg, Florida, was also available at the closing. (Defendant's Exh. No. 2).

These are the relevant facts which, according to the Plaintiff, warrant the granting of relief he seeks based on the several legal theories set forth in the three Counts of the Complaint, i.e., a declaration of nondischargeability of his claim in the amount of $7,000.

 It should be noted at the outset that the purpose of the Bankruptcy Code is to provide the debtor with a new opportunity in life and a clear field for future efforts, unhampered by pressures of pre-existing debt. *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970). Exceptions to discharge are construed strictly against the creditor and liberally in favor of the debtor, and the creditor must prove by clear and convincing evidence that a particular obligation of the debtor falls within the scope of § 523. *In the Matter of Bonanza Import and Export, Inc.*, 43 B.R. 577 (Bankr.S.D.Fla.1984); *In re Garner*, 881 F.2d 579 (8th Cir.1989).

It is true that this view is not uniformly shared by the courts. For instance, while several Circuits require a clear and convincing burden of proof, *see Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257, 1262 (11th Cir.1988); *Matter of Van Horne*, 823 F.2d 1285, 1287 (8th Cir.1987); *In re Phillips*, 804 F.2d 930, 932 (6th Cir.1986); *In re Black*, 787 F.2d 503, 505 (10th Cir.1986); *In re Hunter*, 780 F.2d 1577, 1579 (11th Cir. 1986); *In re Kimzey*, 761 F.2d 421, 423–24 (7th Cir.1985), others held that the standard of proof is only the preponderance of the evidence. *Combs v. Richardson*, 838 F.2d 112, 116 (4th Cir.1988).

In light of the fact that there is a conflict among the circuits regarding the proper standard, the Supreme Court granted certiorari in the *Garner* case. *Garner*, ——

U.S. ——, 110 S.Ct. 1945, 109 L.Ed.2d 308 (1990). Be that as it may, unless and until the Supreme Court determines that the standard necessary to sustain a claim of nondischargeability under § 523(a) is merely a preponderance of the evidence, this Court is satisfied that the proper standard in this Circuit remains the clear and convincing standard.

 When considering the record as established at the trial in light of the clear and convincing standard, this Court is satisfied that there is nothing in this record to sustain a claim for the nondischargeability of a debt under either § 523(a)(2)(A), § 523(a)(4), or § 523(a)(6) of the Bankruptcy Code. Certainly there is nothing in the record to indicate that the Debtor obtained anything by false pretenses, let alone the $7,000 from the Plaintiff. The most that could be said is that the Debtor obtained his commission of $420 by false pretenses; however, the record is devoid of support concerning this proposition. Thus, the claim of nondischargeability under § 523(a)(2)(A) of the Bankruptcy Code cannot be sustained. Neither is there sufficient proof that the Debtor willfully or maliciously injured either the Plaintiff or any property of the Plaintiff and, therefore, the Plaintiff's claim of nondischargeability under § 523(a)(6) equally must fail.

This leaves for consideration the Plaintiff's claim of nondischargeability under § 523(a)(4) of the Bankruptcy Code. This Section excepts from discharge a debt of a debtor which is attributable to fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. At trial, the Plaintiff failed to introduce any evidence regarding any embezzlement or larceny committed by the Debtor, and he also failed to introduce evidence that the Debtor owed a fiduciary duty to the Plaintiff or committed fraud and defalcation while acting in a fiduciary capacity.

 For a fiduciary relationship to exist and to support an action for nondischargeability based on § 523(a)(4), there must exist a technical trust wherein there is a segregated trust res, an identifiable benefi-

ciary, and affirmative trust duties established by contract or by Statute. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *Matter of Thurston,* 18 B.R. 545 (Bankr.M.D.Ga. 1982); *In re Angelle,* 610 F.2d 1335 (5th Cir.1980). The trust relationship must exist *ab initio* and not as the result of a wrongful act. *In re Angelle, supra. In re Dloogoff,* 600 F.2d 166 (8th Cir.1979).

▮ In this case, there is no evidence at all that there was an actual trust created by a trust document or by statute. While it is true that *Fla.Stat.* 494.041(6) provides that funds received by a mortgage broker shall be deposited in the broker's trust account until the note and mortgage are recorded, there is no proof in this record to establish that the Plaintiff deposited any funds with the Debtor which would bring this Statute into operation. The Debtor did not hold money for the Plaintiff that was to be invested in property on behalf of the party which made the deposit. Instead, the money was actually paid to the borrower at the closing.

Lastly, even if one views this record in a manner most favorable to the Plaintiff, this Court rejects the proposition that the Plaintiff, a sophisticated investor in real estate, did not realize, or was prevented by the Debtor from realizing, the identity of the property on which he invested his money.

In summary, this Court is satisfied that the Plaintiff has failed to meet the burden of proving by clear and convincing evidence that the debt owed by the Debtor to the Plaintiff should be declared nondischargeable by virtue of § 523(a)(2)(A), § 523(a)(4), or § 523(a)(6). A separate Final Judgment will be entered in accordance with the foregoing.