# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2788

_____

John Hunter, Harvey Swift, Tom                 *
Lambert, Ivan B. Williams, William H.          *
Noble, A. J. Morrison, Mid-South Iron          *
Workers Welfare Plan, Daniel Navarre,          *
Frank Lanier, Jerry Wilson, Robert             *
Troquille, Phil Dozier, Richard Maples,        *
Donald Denese, Larry Savell, Alfred            *    Appeal from the United States
Dean, Oklahoma Iron Workers Direct             *    District Court for the
Contribution Plan and Trust, Local 584         *    Western District of Arkansas.
Oklahoma Iron Workers Apprenticeship           *
& Training Fund,                               *
                                               *
            Appellees,                         *
                                               *
        v.                                     *
                                               *
David S. Philpott,                             *
                                               *
            Appellant.                         *

_____

Submitted: January 15, 2004
    Filed:  July 1, 2004

_____

Before WOLLMAN, MORRIS SHEPPARD ARNOLD, and COLLOTON, Circuit
    Judges.

_____

WOLLMAN, Circuit Judge.

David Philpott appeals from an order of the district court affirming the bankruptcy court's determination that Philpott's debts to the Mid-South Iron Workers Welfare Plan, Iron Workers Mid-South Pension Fund, Oklahoma Iron Workers Direct Contribution Plan and Trust, and Oklahoma Iron Workers Apprenticeship & Training Funds, Local 584 (all appellees hereinafter collectively referred to as "Funds") are nondischargeable under section 523(a)(4) of the Bankruptcy Code, 11 U.S.C. § 523(a)(4). We reverse.

**I.**

Philpott and Scott Manuel were the sole shareholders, equal owners, and officers of Quality Home Improvements & General Contracting, Inc. (Quality Home). Manuel, on behalf of Quality Home, signed a collective bargaining agreement (CBA) with the Funds so that Quality Home could employ certain union members.

The CBA obligated Quality Home to pay contributions to the Funds if and when Quality Home employed union members, which Quality Home did and thus submitted the contractually required monthly contribution reports to the Funds for November 1999, December 1999, January 2000, and February 2000. The contributions owed to the Funds for November and December were paid by check drawn on Quality Home's account on February 29, 2000, but no payments were made to the Funds for January and February. Additionally, between November 1999 and April 2000, cash withdrawals were made from the Quality Home account, and Philpott and Manuel issued checks to themselves from the same account for amounts in excess of $24,500.

The Funds sued Quality Home under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, seeking a payroll audit and a judgment in the amount of the unpaid January and February contributions, which

the bankruptcy court found to amount to $84,471.67 inclusive of interest. Philpott filed for bankruptcy protection, whereupon the Funds brought an adversary proceeding against him, alleging that he committed defalcation of the Funds' property while serving in a fiduciary capacity.

Section 523(a)(4) of the Bankruptcy Code provides, in pertinent part that "[a] discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt ... for fraud or defalcation while acting in a fiduciary capacity ... ."[1] The bankruptcy court held that the unpaid contributions were the Funds' property, that Philpott was an ERISA fiduciary of the Funds and therefore acting in a fiduciary capacity for the purposes of § 523(a)(4), and that Philpott committed defalcation in breach of his fiduciary duty by failing to hold all available assets for the purpose of satisfying Quality Home's obligations to the Funds. The district court affirmed the bankruptcy court's nondischargeability holding. The question before us is whether an ERISA fiduciary is necessarily also a fiduciary for the purposes of § 523(a)(4).

We review the district and bankruptcy courts' findings of fact for clear error and conclusions of law de novo. Haden v. Pelofski, 212 F.3d 466, 470 (8th Cir. 2000).

## II.

One of our sister circuits has held that an ERISA fiduciary is *ipso facto* a fiduciary for the purposes of § 523(a)(4). In re Hemmeter, 242 F.3d 1186 (9th Cir. 2001). The Funds urge us to follow the Ninth Circuit's opinion and hold, as did the

---

[1]Defalcation is not defined in the bankruptcy code. Generally, it is considered to be "a failure to account for money or property that has been entrusted to one." In re Cummins, 166 B.R. 338, 354 (Bankr. W.D. Ark. 1994) (citing In re Long,774 F.2d 875, 878 (8th Cir. 1985)). Because we conclude that Philpott was not a fiduciary, we do not reach the question whether he committed defalcation.

bankruptcy court, that Philpott was serving in a fiduciary capacity because the money owed to the Funds became the property of the Funds at the time the union members performed the labor. Philpott was a fiduciary of the Funds because he was in control of an ERISA plan's assets. See 29 U.S.C. § 1002(21)(A). We are not satisfied that the simple determination than an individual is an ERISA fiduciary is enough to satisfy the requirements of § 523(a)(4). Instead, we believe that the prior holdings of our court and the United States Supreme Court require that we look specifically at the property that is alleged to have been defalcated to determine whether Philpott was legally obligated to hold that specific property for the benefit of the Funds.

We have interpreted the term "fiduciary" in § 523(a)(4) to refer only to trustees of "express trusts." In re Long, 774 F.2d 875, 878 (quoting Davis v. Aetna Acceptance Co., 293 U.S. 328, 333 (1934)); see also In re Cantrell, 329 F.3d 1119, 1125 (9th Cir. 2003) ("[T]he broad, general definition of fiduciary – a relationship involving confidence, trust and good faith – is inapplicable in the dischargeability context."). The term is used in a "strict and narrow sense," and therefore does not embrace trustees of constructive trusts imposed by law because of the trustee's malfeasance. In re Long, 774 F.2d at 878; see also In re Cochran, 124 F.3d 978, 984 (8th Cir. 1997) (holding that the question of fiduciary status is a question of federal law). The bankruptcy court held that the express trusts were the ERISA funds themselves, and that the fiduciary relationship was created when Quality Home entered into the CBA. We disagree.

The CBA did not include a provision that explicitly required Quality Home to hold income earned as a result of the union member's labor in trust for the satisfaction of liabilities owed to the Funds. Philpott was therefore not legally obligated to hold any particular property for the benefit of the Funds. In fact, there is no indication in the record that any of the $709,959.98 deposited into the Quality Home account from November 1999 through March 2000 was generated by union members. Simply possessing property to which an ERISA plan asserts a claim does not place one in a

fiduciary relationship with the plan.  See, e.g., Witt v. Allstate Ins. Co., 50 F.3d 536, 537 (8th Cir. 1995) (interpreting ERISA in a non-bankruptcy context).

We look to the substance of the transaction in deciding whether a person is a fiduciary or whether the relationship is more contractual than fiduciary.  In re Long, 774 F.2d at 878; Werner v. Hofmann, 5 F.3d 1170, 1172 (8th Cir. 1993) (per curiam) (noting that a fiduciary relationship does not arise from a mere contractual relationship).  It is true that, pursuant to the CBA, Quality Home became a party to the various trust agreements establishing the Funds, which are union-sponsored, multiple-employer ERISA plans, and that under the trust documents Quality Home had the limited right to appoint Employer Trustees.  But if the trust preexisted the signing of the CBA, which appears from the record to be the case with each of the trusts involved here, Quality Home had no power of appointment, because under those circumstances the trust documents give that power to the incumbent Employer Trustees.  To the extent that this limited power of appointment made Quality Home technically a trustee of the trusts, we believe that it was nevertheless not a trustee "'in the strict and narrow sense,' as required to bar discharge under § 523(a)(4)."  In re Long, 774 F.2d at 878.

Quality Home did agree that it would make payments to the Funds if and when union members completed certain work.  But Philpott did not sign the agreement or in any way guarantee Quality Home's performance under the agreement.  Additionally, neither Quality Home nor Philpott was in any position to act solely for the benefit of the Funds, which is a fundamental responsibility of ERISA fiduciaries.  29 U.S.C. § 1104(a)(1); Kerns v. Benefit Trust Life Ins. Co., 992 F.2d 214, 216 (8th Cir. 1993).

In re Long is additionally instructive because there, as in the instant matter, the individual was not a party to the contract that was alleged to have created the fiduciary relationship.  Since Philpott was not personally a party to the CBA, he

cannot have expressly assumed the status of trustee of any trust arising from that document. In re Long, 774 F.2d at 878. Accordingly, we conclude that the substance of the relationship between Philpott individually and the Funds was basically contractual, not fiduciary, in nature. Id. at 879 ( holding that where an individual's relationship with a creditor inherently was more contractual than fiduciary, the exception to dischargeability cannot apply).

In the § 523(a)(4) context, the fiduciary relationship must preexist "the incident creating the contested debt and apart from it. It is not enough that the trust relationship spring from the act from which the debt arose." In re Dloogoff, 600 F.2d 166, 168 (8th Cir. 1979); Davis, 293 U.S. at 333 ("It is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio. He must have been a trustee before the wrong and without reference thereto."). The bankruptcy court concluded that Philpott's fiduciary status preexisted the debt, as the fiduciary relationship was created by the CBA. It is necessary to look at the relationship between Philpott personally and the Funds, however, and not view Philpott simply as an alter ego of Quality Home. Philpott's debt to the Funds did not preexist the allegedly wrongful act complained of: that is, his failure to hold money to satisfy Quality Home's owed contributions. Any possible trust relationship between Philpott and the Funds could only have come into existence when he incurred some individual financial liability to the Funds. His personal liability arose at the time of Quality Home's failure to satisfy its obligations. Only then did he owe a duty to the Funds. The only possible trust relationship therefore would have sprung from the wrongful act that created the financial liability. Application of § 523(a)(4)'s exception to discharge under these circumstances would therefore violate the long-standing rule enunciated by the Supreme Court in Davis.

The judgment is reversed, and the case is remanded to the district court with directions that the complaint be dismissed.

_____