In the Matter of BONANZA IMPORT & EXPORT, INC., et al., Debtors.

CHASE BANK INTERNATIONAL, Plaintiff,

v.

Julio KLEPACH and Esther Klepach, Defendants.

Bankruptcy No. 83–01089–BKC–JAG.
Adv. No. 83–0911–BKC–JAG–A.

United States Bankruptcy Court,
S.D. Florida.

Oct. 3, 1984.

See also 43 B.R. 570.

Roy M. Hartman, Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, Fla., for Chase Bank Intern.

Andrew J. Nierenberg, Britton, Cohen, Cassel, Kaufman & Schantz, P.A., Miami, Fla., for Klepach.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JOSEPH A. GASSEN, Bankruptcy Judge.

This adversary proceeding commenced with the filing of a complaint by Chase Bank International (Chase) seeking to determine the dischargeability of a corporate debt personally guaranteed by Julio Klepach and his wife Esther Klepach, the defendants. The Court, having heard the testimony at trial held on January 18, 1984 and March 16 and 19–22, 1984 and examined the evidence presented; observed the candor and demeanor of the witnesses; considered their arguments of counsel and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

In November 1973, Chase extended a line of credit to Bonanza Import & Export, Inc.

(Bonanza) which was transferred to Bonanza Export (DISC), Inc. (DISC) under the guarantee of Bonanza in 1974. The purpose of the DISC line of credit was to finance DISC's international trade transactions and to permit it to open letters of credit. Since May 1977, Julio Klepach, President of DISC, and Esther Klepach, an officer of DISC, who both were also DISC's sole shareholders, personally guaranteed DISC's payment obligations. As of October 3, 1984, the corporate debt which defendants personally guaranteed amounted to $175,277.77 plus interest.

Before Chase accepts a personal guarantee from a principal shareholder of a small, closely held corporation, it requires the prospective guarantor to submit a personal financial statement. Prior to extending any credit to such a corporation, Chase analyzes the potential guarantor's financial statement to ascertain if his net worth is at least ten times the amount of the credit facility proposed to be extended. If an individual is accepted as a guarantor, Chase then requires the guarantor to submit personal financial statements on an annual basis. Accordingly, Chase conditioned the DISC line of credit on defendants' annual submission of their personal financial statements. Defendants submitted personal financial statements to Chase dated February 21, 1979, January 31, 1980, October 31, 1980 and October 31, 1981.

In July 1981, a $150,000 credit facility had been extended to DISC. At that time, Wanda Veski, a Chase assistant treasurer, undertook responsibility as the DISC loan officer. When Julio Klepach sought to increase the line of credit to $300,000 in October 1981, Ms. Veski met with Julio Klepach and her superiors at Chase to discuss the terms and conditions under which Chase would increase the line of credit. Chase required the submission of audited corporate financial statements, favorable credit references from other local banks, that Chase continue to hold liens on DISC's inventory and receivables, that defendants personally guarantee repayment of the full amount of the corporate indebtedness and

that defendants submit an updated personal financial statement. On March 18, 1982, Julio Klepach submitted the October 31, 1981 joint personal financial statement in order to obtain an increase in the credit line.

Thereafter, Ms. Veski reviewed this financial statement to ascertain whether the defendants had a sufficient net worth to repay the proposed $300,000 facility, if called upon to do so. In doing so, however, Ms. Veski merely looked at the front page of the October 31, 1981 financial statement to determine if the Klepachs' net worth was at least ten times the proposed loan amount. Although Chase maintained the Klepachs' previous financial statements in its files, Ms. Veski conceded during cross examination that she did not compare the updated October 31, 1981 financial statement with the previous financial statements on file nor did she compare the real estate holdings on the October 31, 1981 financial statement with the holdings on the previous financial statements.

Chase challenges the discharge of the debt on the basis of 11 U.S.C. Section 523(a)(2)(B) which excepts from discharge:

any debt—(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive; ....

■ Exceptions to discharge are to be strictly and narrowly construed in favor of the debtor. *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915); *In re Lowinger*, 19 B.R. 853 (Bkrtcy.S.D.Fla. 1982); *First and Merchants Nat'l Bank of Radford v. Jones*, 3 B.R. 410 (Bkrtcy.W.D.

Va.1980); *In re Stewart,* 10 B.R. 214 (Bkrtcy.C.D.Cal.1981); *Matter of Trewyn,* 12 B.R. 543 (Bkrtcy.W.D.Wis.1981).

■ In challenging the dischargability of a debt, the creditor bears the burden of proof. *In re Robertos, Inc.,* 18 B.R. 551 (Bkrtcy.S.D.Fla.1982); *Second Nat'l Bank of Tampa v. Fox,* 17 B.R. 300 (Bkrtcy.M.D. Fla.1982); *In re Lowinger, supra;* Bankruptcy Rule 407. Further, the creditor must establish each element of his claim of nondischargability by clear and convincing evidence. *In re Lowinger, supra; Second Nat'l Bank of Tampa v. Fox, supra; In re Ashley,* 5 B.R. 262 (Bkrtcy.E.D.Tenn.1980); *First and Merchants Nat'l Bank of Radford v. Jones, supra; Matter of Albritton,* 17 B.R. 555 (Bkrtcy.M.D.Fla.1982).

■ The Court finds that under Section 523(a)(2)(B)(i), (ii) and (iv) defendants' financial statements were materially false and that they intended to deceive Chase as to their true financial condition[1]; however, Chase did not rely on these statements, let alone reasonably rely on them, in extending credit to DISC. Ms. Veski's testimony did not establish that she or anyone else at Chase relied upon the information contained in defendants' October 31, 1981 financial statement. While Ms. Veski performed a mathematical calculation regarding defendants net worth and the proposed credit facility, this calculation is not the type of analysis or reliance contemplated by Section 523(a)(2)(B). Since Chase failed to establish the element of reliance by clear and convincing evidence, the Court cannot preclude a discharge of the defendants' debt to Chase.

Pursuant to Bankruptcy Rule 9021(a), a Final Judgment will be entered in accordance with these Findings of Fact and Conclusions of Law.

1. The information in the financial statements were identical to that contained within the financial statements submitted to Banco Exterior de Espana, S.A.; Standard Chartered Bank, PLC and Totalbank. The Court's findings and conclusions as to the material falsity of these state-

ments and the defendants' intent to deceive these banks hold equally true in this proceeding. However, the Court need not address those issues here since it finds that Chase did not rely on the financial statements in question.