**In re Bernard R. SANDERS, Jr., and Bonnie L. Sanders, Debtors.**

**George A. TAYLOR, Plaintiff,**

v.

**Bernard R. SANDERS Jr., and Bonnie L. Sanders, Defendant.**

**Bankruptcy No. 89–0329–8P7.**

**Adv. No. 89–148.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 28, 1989.

Timothy R. Parry, Naples, Fla., for plaintiff.

Charles A. Medearis, St. Petersburg, Fla., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 7 case and the matter under consideration is the dischargeability vel non of a claim asserted by George A. Taylor (Plaintiff). It is the contention of the Plaintiff that Bernard R. Sanders, Jr., and Bonnie L. Sanders (Debtors) are liable to the Plaintiff in the amount of $15,909.83 and that such liability is nondischargeable pursuant to § 523(a)(6) of the Bankruptcy Code for conversion and pursuant to § 523(a)(4) of the Bankruptcy Code for breach of a fiduciary duty owed to the Plaintiff.

The facts as established at the final evidentiary hearing which are relevant to the disposition of this cause are as follows:

On May 9, 1987, the Plaintiff, a retired resident of Naples, Florida, entered into an automobile lease and option to purchase with First Lease of Florida, Inc. (First Lease), a Florida corporation having offices located in Tampa, Florida, and Clearwater, Florida (Plaintiff's Exh. No. 1). At the time the lease was entered into, First Lease was owned and managed by Audrey Krauss. Under the terms of the lease agreement, First Lease acted as a broker and arranged for Citicorp to purchase a vehicle from a dealer which Citicorp then leased to the Plaintiff. First Lease was paid a fee for arranging the transaction between the Plaintiff and Citicorp. The lease agreement provided that the Plaintiff would make monthly lease payments directly to Citicorp. First Lease reserved the right to earn an additional fee in the event that Plaintiff exercised his option to purchase the leased vehicle at a later date.

On November 7, 1987, all of the assets of First Lease, including contract rights under the Plaintiff's lease agreement, were purchased by the Debtors and two additional individuals who formed a new corporation under the same name. The two additional shareholder-investors transferred their interests in First Lease to the Debtors in July 1988 and November 1988.

On December 15, 1988, the Plaintiff contacted Citicorp in hopes of exercising his option to purchase the leased vehicle. Citicorp's representative directed the Plaintiff to contact First Lease and to pay First Lease the option price to purchase the vehicle. Under the terms of the agreement between Citicorp and First Lease, First Lease was required to assist the Plaintiff in his exercise of the purchase option and to remit the funds obtained from the Plaintiff to Citicorp (Plaintiff's Exh. No. 6). The Plaintiff then telephoned First Lease on December 17, 1989, at its offices located in Clearwater, Florida, and spoke with Teresa Scott (Scott), an employee of First Lease. She acknowledged familiarity with the Plaintiff's lease and confirmed that First Lease was able to complete the Plaintiff's purchase option. After checking with Citicorp to determine the amount of the option price, Scott telephoned the Plaintiff and informed him that he would be required to execute an odometer statement and certain other documents and remit the option price of $15,909.83. Scott forwarded the appropriate forms to the Plaintiff who completed the forms and returned them to First Lease along with a check in the amount of $15,909.83 (Plaintiff's Exh. Nos. 2.1, 2.2, 2.3, 3, 4). The check indicated that the funds were being forwarded to First Lease for the purpose of completing the purchase of the leased vehicle.

On December 23, 1988, Scott received the Plaintiff's letter and check and deposited the check in First Lease's corporate operating account pursuant to directions from Bernard R. Sanders, Jr. (Mr. Sanders), one of the Debtors. First Lease never made payment to Citicorp to complete the exercise of the Plaintiff's purchase option. As a result, the Plaintiff has paid the option price but does not have legal title to the purchased vehicle.

Various bank records entered into evidence indicate that First Lease commingled the funds received from the Plaintiff with all other funds in its general operating account (Plaintiff's Exh. No. 8). It is impossible to trace the path of the payment made by the Plaintiff after it was deposited into the general operating account. It appears First Lease used the funds to pay bills in the ordinary course of business. The evidence is inconclusive as to exactly where the funds supplied by the Plaintiff were eventually disbursed. Subsequent to the deposit of the Plaintiff's check by First Lease, approximately $13,500.00 was paid by First Lease to Citicorp in order to pay the option price of another vehicle. In addition, approximately $300.00 was paid as salary to Bonnie Sanders (Ms. Sanders), one of the Debtors. Approximately $2,200.00 was paid to Type–Graphics, Inc., a corporation which was also owned and controlled by the Debtors.

■ It is well established that the overriding purpose of the Bankruptcy Code is to provide the Debtor with comprehensive, much-needed relief from the burden of his indebtedness by releasing him from virtual-

ly all of his debts. *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). In keeping with this policy, the exceptions to discharge set out in § 523 of the Bankruptcy Code are generally construed narrowly against the creditor and in favor of the debtor. *In the Matter of Bonanza Import and Export, Inc.*, 43 B.R. 577 (Bkrtcy.S.D.Fla.1988). Thus, the burden lies with the Plaintiff to prove by clear and convincing evidence that a particular obligation of the debtor falls within the scope of § 523. The Plaintiff must establish each element of his claim of nondischargeability by clear and convincing evidence. *In the Matter of Bonanza Import and Export, Inc., supra; In re Hyers*, 70 B.R. 764 (Bkrtcy.M.D.Fla.1987); *In re Cramer*, 93 B.R. 764 (Bkrtcy.M.D.Fla. 1988).

No evidence was presented to indicate that Ms. Sanders had any knowledge of the transaction between First Lease and the Plaintiff. To the contrary, testimony was presented which indicated that Ms. Sanders spent most of the month of December, 1988, taking care of her hospitalized daughter and that she was not involved in the business during this time. Therefore, the Plaintiff has clearly failed to meet his burden of proof with respect to the Complaint against Ms. Sanders, and the same should be dismissed.

■ The Complaint against Mr. Sanders is equally troublesome. In order to meet the requirements of § 523(a)(4), there must be in existence an express or "technical" trust. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934), *In the Matter of Campbell*, 79 B.R. 496, 498 (Bkrtcy.M.D.Fla.1986). There is no evidence of any trust agreement between the parties in this case. The parties had never met, had never spoken with one another and had never signed any agreement between one another. Counsel for the Plaintiff has attempted to rely upon a Florida statute creating a trust; however, it is clear that the question of whether a trust existed is one to be decided by federal law. *In the Matter of Angelle*, 610 F.2d 1335 (5th Cir.1980), *In re Dloogoff,*

600 F.2d 166 (8th Cir.1979). In those instances where courts have held a trust to exist pursuant to state statute, those statutes required maintenance of a separate trust account. *In re Kelley*, 84 B.R. 225, 230 (Bkrtcy.M.D.Fla.1988). There is no such Florida Statute requiring automobile lease brokers to maintain a trust account. Therefore, this Court holds that there was no fiduciary duty owed to the Plaintiff by the Debtors and Count I should be dismissed.

■ The second count of the Plaintiff's Complaint alleges conversion. The evidence clearly shows that the check was made payable to First Lease and was deposited into the First Lease general operating account and was not deposited into any account owned by the Debtors. It is unclear as to where the funds went from there. However, the evidence supports a finding that the funds were used to pay bills in the ordinary course of business as they came due.

In order to establish a claim for conversion, the Plaintiff must show an act of dominion or control wrongfully asserted over another's property. It is essential that the Plaintiff show that the converted item is indeed his property. Once the check was delivered to First Lease, it was no longer the property of the Plaintiff and could not be the subject of a conversion. *In re Lambillotte*, 17 B.R. 256, 258 (Bkrtcy.M.D.Fla.1982), *In re Criswell*, 52 B.R. 184, 203 (Bkrtcy.E.D.Va.1985). Therefore, the Plaintiff's claim of conversion should be dismissed.

Based on the foregoing, this Court is satisfied that the Plaintiff did not establish with the requisite degree of proof the elements of a claim of nondischargeability under either § 523(a)(4) or § 523(a)(6) of the Bankruptcy Code. For this reason, Plaintiff's Complaint shall be dismissed.

A separate Final Judgment will be entered in accordance with the foregoing.