**In re Donald J. KLAG and Geraldine A. Klag, Debtors.**

**AMERICAN INVESTMENT BANK, N.A., Plaintiff,**

**v.**

**Donald J. KLAG and Geraldine A. Klag, Defendants.**

**Bankruptcy No. 89–2748–8P7.**

**Adv. No. 89–319.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

March 23, 1990.

Mark J. Wolfson, Tampa, Fla., for plaintiff.

Michael Edenfield, for defendants.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 7 liquidation case, and the matter under consideration is the dischargeability vel non of a debt owed by the Defendant, Donald J. Klag (Debtor) to American Investment Bank, N.A. (Bank). The claim of nondischargeability asserted by the Bank is based on Section 523(a)(2)(B) of the Bankruptcy Code. At trial, the parties have stipulated that all but one of the elements of § 523(a)(2)(B) have been met,

and the only issue before the Court is whether the Bank reasonably relied on the false financial statement submitted by the Debtor in his application for the renewal of an already outstanding loan. The following facts which are relevant and germane to this issue as appear from the record are as follows:

The Bank engages in an unsecured loan program geared to business executives and professionals whose income is not based upon commissions. The program is marketed to these professionals based on the assumption that they generally have above-average income and do accumulate assets during their professional lives which assures repayment of these types of loans. One feature of the program is its confidential nature. The Bank does not contact the applicant's neighbors, friends or employers to advise them of the loan request or to verify information received from the applicant. Ordinarily, the Bank will loan up to $50,000 to qualified applicants on an unsecured basis, with a renewal possibility. Repayment of these loans is scheduled between six and sixty months.

The Bank's loan approval procedure typically involves a review of the applicant's combined loan application and financial statement, most recent federal income tax return, and a credit report. The applicant's listing in the current edition of the appropriate national professional directory is also verified, and a phone interview with the applicant is conducted. The process for renewal loans involves the same steps, and also includes an examination of the applicant's loan payment history with the Bank. A new federal income tax return may or may not be requested at the time a renewal is requested.

At the time relevant, the Debtor, a dentist by profession, had been practicing as a sole practitioner in Pinellas County, Florida since 1976. In March 1985, the Debtor responded to the Bank's advertisement in "The Journal of the American Dental Association" by completing and submitting to the Bank a combined loan application and financial statement and a copy of his 1983 federal income tax return, the most recent return available. (Plaintiff's Exh. No. 1). On the application, the Debtor stated that his net income was $100,000, and he placed the value of his dental practice at $175,000. As was also required, he stated his profession to be a dentist and provided the address and phone number of both his home and business. The Debtor applied for a six-month balloon loan in the amount of $50,000.

It is undisputed that the Bank approved a six-month loan to the Debtor in the principal amount of $30,000, and issued a check in that amount to the Debtor after receiving a promissory note signed by the Debtor and his wife. It is also undisputed that after six months, the Debtor requested and the Bank agreed to a renewal of the loan for another six-month term. The Debtor and his wife subsequently executed a new promissory note. When the loan became due in May, and again in December of 1986, the Bank again agreed to a renewal of the loan for an additional six months. At each renewal the Debtor and his wife signed a new promissory note. While the Debtor paid all accrued interest when each note was renewed, he was not required to pay anything on the principal, and paid none.

In June 1987, the Debtor again sought a renewal for the fourth time. He completed his second loan application and financial statement and submitted it to the Bank, along with a copy of his 1985 federal income tax return. (Plaintiff's Exh. No. 4). The Bank again verified the Debtor's listing in the American Dental Association's membership directory, and obtained a credit report on the Debtor. (Defendant's Exh. No. 3) This report revealed approximately $96,000 in debts that the Debtor did not report on his original loan application.

A loan officer of the Bank telephoned the Debtor at his home to discuss the renewal request and the previously undisclosed debt, and to verify the Debtor's home and office telephone numbers. It is undisputed that the Debtor verified his home number, but he refused to verify his office number, purportedly because he did not want to be called at his office regarding this loan.

The Debtor also told the loan officer that he still had an income of $100,000 per year, and he confirmed that the value of his dental practice remained at $175,000. At trial, the Debtor admitted that when he submitted his second financial statement, contrary to the information provided on the statement, the value of his dental practice was far below $175,000, and the fact of the matter is that he was no longer practicing his profession as a dentist, but was selling real estate on commission, and his income was far less than $100,000 per year as stated on the application.

Because of the Debtor's previously unlisted debt in the amount of $96,000, the Bank refused to renew the loan. Instead, the Debtor was offered an opportunity to pay the entire $30,000 over 60 months, or to make a principal reduction of $10,000 and pay the $20,000 balance over six months. The Debtor chose to have the loan renewed for 60 months, and the Debtor and his wife executed a new promissory note.

When the Debtor failed to make the installment payment on this new promissory note, the Bank filed suit against the Debtor and his wife to collect the obligation represented by the note. Soon thereafter, the Debtor and his wife filed a Petition for Relief under Chapter 11 of the Bankruptcy Code, and the Bank filed this adversary proceeding to have the Debtor's debt declared nondischargeable pursuant to § 523(a)(2)(B).

Section 523(a)(2)(B) provides in part that a debt for renewal of credit is not dischargeable if it was obtained by the use of a materially false written statement regarding the debtor's financial condition which the debtor caused to be published with intent to deceive, and on which the creditor reasonably relied. As was noted earlier, the parties in this case have stipulated that all of the elements of § 523(a)(2)(B) have been met except for that of reasonable reliance. Therefore, the only issue to be resolved is whether or not the Bank reasonably relied on the Debtor's materially false statement.

It is well established that the basic purpose of all bankruptcy legislation has been in the past and still is to give the debtor a new opportunity in life and a clear field for future efforts, unhampered by the pressure and discouragement of pre-existing debt. *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970). The discharge provision of the Bankruptcy Code was also designed by Congress to enable the debtor to obtain a fresh start, free from obligations and responsibilities attendant to previous business misfortunes. In keeping with this policy, exceptions to discharge are strictly construed against the creditor and construed liberally in favor of the debtors. *In the Matter of Bonanza Import and Export, Inc.*, 43 B.R. 577 (Bankr.S.D.Fla. 1984).

The quantum of proof required to sustain a claim of nondischargeability is far from clear. The Code itself is silent as to the burden of proof necessary to establish an exception to the discharge under § 523(a). Both appellate and bankruptcy courts are split as to whether or not the standard is clear and convincing evidence or merely a preponderance of the evidence. There are six circuits which held that the burden of proof for fraud under § 523(a) of the Bankruptcy Code is clear and convincing evidence. *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257, 1262 (11th Cir. 1988); *Combs v. Richardson*, 838 F.2d 112, 116 (4th Cir.1988); *Matter of Van Horne*, 823 F.2d 1285, 1287 (8th Cir.1987); *In re Phillips*, 804 F.2d 930, 932 (6th Cir.1986); *In re Black*, 787 F.2d 503, 505 (10th Cir. 1986); *In re Hunter*, 780 F.2d 1577, 1579 (11th Cir.1986); *In re Kimzey*, 761 F.2d 421, 423–24 (7th Cir.1985). Only the Fourth Circuit has adopted the preponderance of the evidence standard. *Combs v. Richardson, supra.* The latest pronouncement is the decision of the Eighth Circuit in the case of *In re Garner*, 881 F.2d 579 (8th Cir.1989) where the Court of Appeals, having considered extensively the case law covering this subject, concluded that they still adhere to the majority rule and require a clear and convincing standard before a

claim of nondischargeability can be sustained under § 523(a)(2), *citing, Matter of Van Horne, supra.* It should be noted that the Supreme Court currently has under consideration this issue in the case of *Grogan v. Garner,* Dkt. No. 89–1149, page 31, 102, petition for *cert.* pending. Pending a resolution of this issue by the Supreme Court, this Court is satisfied that the well-reasoned opinion joining or accepting the majority approach is more persuasive and based on the foregoing, this Court is satisfied that the claim of nondischargeability under § 523(a)(2)(A) or (B) cannot be sustained unless the proof presented is clear and convincing.

In the present instance, the Bank granted an unsecured loan to the Debtor in the amount of $30,000. It is without doubt, as noted earlier, that the loan policy of the Bank to offer an unsecured loan to a prospective borrower and to grant or not to grant the loan is determined by the professional standing of the prospective borrower and its income and value of the professional's practice, in this instance the Debtor's dental practice. There is hardly any question that the Bank renewed this loan three times based on the Debtor's original loan application and his financial statement. It was not until the Debtor requested the fourth renewal and the credit check revealed a previously undisclosed liability in the amount of $97,000 that the Bank refused to renew the loan under the previous terms. Instead, the Bank offered a long term repayment plan to the Debtor, ostensibly still relying on the professional status of the Debtor. Most importantly, the Bank failed to verify whether the Debtor was still a practicing dentist or engaged in some other type of endeavor which, according to the Bank's policy, would not have qualified him for the unsecured loan at all. In sum, the proof presented by the Debtor leads to the conclusion that the Bank relied on the original loan application when the short-term six-month loan was converted into a long-term pay-out and that such reliance would have been clearly inconsistent with the prudent business practice of any lending institution. See, *In re Jones,* 3 B.R. 410 (W.D.Va.1980); *In the Matter of Ebbin,* 32 B.R. 936 (S.D.N.Y.1983); *In re Patch,* 24 B.R. 563 (D.C.M.D.1982). *See also, Zaretsky, "The Fraud Exception to Discharge under The New Bankruptcy Code",* 53 Am.B.L.J. 253, 261–62 (1979), cited in *In re Ebbin,* at 942.

Based on this record, this Court is satisfied that the claim of nondischargeability asserted by the Bank cannot be sustained.

A separate final judgment shall be entered in accordance with the foregoing.